UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARIEN LAING,

               Petitioner,

    -vs-

MICHAEL GIAMBRUNO,
SUPERINTENDENT

               Respondent.

_____

**DECISION AND ORDER**
**No. 10-CV-06711(MAT)**

## I.   Introduction

Petitioner Darien Laing ("Petitioner"), through counsel, has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered October 24, 2007, in New York State, Supreme Court, Erie County (Hon. Russell P. Buscaglia), convicting him, after a jury trial, of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law ("Penal Law") § 265.03(3)). Petitioner was sentenced to a determinate term of eight years imprisonment and five years of post-release supervision.

## II.  Factual Background and Procedural History

In the early morning hours of January 1, 2007, Petitioner, Pia Harris ("Harris"), and Germaine Lester ("Lester"), arrived at the Town Ballroom, a club located in the City of Buffalo, New York, for a New Year's celebration.  Before entering the club, Petitioner, Harris, and Lester were checked by security.  They then entered the

club together.  According to Harris, she and Petitioner spent most of the night together inside the club.  Sometime between 3:30 a.m. and 3:45 a.m., pushing and shoving broke out in the club and security ushered a group of about 20 to 30 people out of the club through its Main Street exit.  Petitioner, Harris, and Lester were in the crowd and were pushed out of the exit.  Once outside of the club, the crowd moved to the left, headed south on Main Street, and then made a left turn down an alleyway towards a parking lot on Washington Street.  Trial Trans. [T.T.] 280, 486-488, 491, 493-494, 520-524, 536-538, 542.

Shortly thereafter, Desmond Peterson ("Peterson"), who was the owner of a security consultant firm and who had been hired by the club to oversee its security for New Year's Eve, exited the club and walked to the alleyway for purposes of "checking things out." T.T. 238.  Peterson testified that he observed "three people" in the alleyway -- a couple and Petitioner -- walking away from him T.T. 284.  Terry Stevens ("Stevens"), another security guard who had been hired by the club for New Year's Eve, was stationed by the alleyway.  Stevens testified that there were other security officers in the same vicinity, and that he observed "maybe four guys in [his] visual."  T.T. 342.  Stevens testified that towards the end of the alley that he was stationed at, "[t]here was a couple coming through the alley" and that Petitioner was behind the couple walking toward him.  T.T. 343.  Stevens testified further

that "[t]here might have been two women at the back [of the alley] -- not might, there was two women at the far end of the alley just about to enter in."  T.T. 343.[1]  According to Stevens, Petitioner "was speaking in an exceptionally large tone of voice by some of the things that he was saying.  He was walking erratic and kept saying nobody wants it with me, you know.  Don't nobody want beef with me."  T.T. 345.  Peterson testified that Petitioner "was kind of yelling or whatever," but that he "wasn't actually sure exactly what [Petitioner] was saying."  T.T. 240.  Stevens testified that Petitioner then "extended both hands into the air and then . . . his hands came down . . . and then he raised one hand at this point into the air and he fired a single shot into the air."  T.T. 346.  Stevens testified that he heard a shot and observed a "muzzle flash," although he did not initially see a weapon in Petitioner's hand.  T.T. 346-347.  Peterson testified that he also "heard a bang and . . . saw a muzzle flash" from the direction of Petitioner.  T.T. 241.  The two people who were in the alley immediately dropped to the ground when the shot was fired.  T.T. 241, 348.  Petitioner "then turned and his face focused on" Stevens, and both Stevens and Peterson yelled to Petitioner to put his hands up.  T.T. 241, 348.

---

[1]

     On cross-examination, defense counsel asked Stevens the following question: "And when you were looking down the alleyway, you saw two people, a couple in the front, you saw Darien Laing, and two other people down the way?"  T.T. 354.  In response, Stevens answered, "[y]es, at the far end of the alley."  T.T. 355. Defense counsel then clarified, asking Stevens, "[s]o in that alleyway there was at least five other people, and not three, am I correct."  T.T. 355.  Stevens answered in the affirmative.  T.T. 355.

Petitioner ignored the security guards' instructions.  At this point, Petitioner was facing Stevens and his back was toward Peterson.  T.T. 242.  Peterson proceeded down the alleyway, instructing Petitioner to get on the ground and show his hands. T.T. 242.  Petitioner reached into his waistband, and appeared to stuff something in the front of his pants.  T.T. 241-242, 348. Peterson and Stevens continued to yell at Petitioner to heed their instructions, which Petitioner ignored. T.T. 242, 348. Petitioner eventually stopped, turned toward Peterson, and pointed a small handgun at him.  At that point, Peterson fired the licensed firearm he was carrying for security purposes that night.  Peterson's shot did not strike Petitioner, but the shot made Petitioner jump and drop his weapon.  T.T. 237-243, 341-350.

Officer Gramaglia of the Buffalo Police Department ("BPD"), who was making an arrest on Washington Street for an unrelated drug incident, rushed to the scene after hearing the gun shots.  Officer Gramaglia ran to Petitioner and tackled him to the ground.  While Officer Gramaglia was handcuffing Petitioner, Stevens picked up the handgun Petitioner had dropped on the ground.  After Officer Gramaglia finished handcuffing Petitioner, Stevens handed Officer Gramaglia the gun, which Officer Gramaglia unloaded for safety purposes.  The gun, which  was capable of holding two rounds of ammunition, had one live round left in it.  Officer Gramaglia turned the gun over to his partner BPD Officer Joseph Ruggiero who

submitted the gun to the Erie County forensics lab for testing. T.T. 340, 350, 407-409, 428-434.

Firearms examiner Stuart Easter ("Easter") conducted testing on the weapon.  Easter confirmed the gun was a two-shot weapon and that it contained one fired cartridge case and one unfired cartridge.  T.T. 452-454.

At the close of Petitioner's jury trial, he was found guilty as charged.  T.T. 650.  Subsequently, he was sentenced to a determinate term of eight years imprisonment, and five years of post-release supervision.  Sentencing Mins. [S.M.] 9.

Petitioner appealed his judgment of conviction in the Appellate Division, Fourth Department on the following grounds: (1) legally insufficient evidence; (2) the trial court erred by failing to grant Petitioner's motion for submission of a lesser offense;  (3) the verdict was against the weight of the evidence; and (4) the sentence was harsh and excessive.  See Pet'r Br. on Appeal, Points One-Four at Resp't Ex. B.  The Appellate Division, Fourth Department unanimously affirmed Petitioner's judgment of conviction on October 2, 2009.  People v. Laing, 66 A.D.3d 1353 (4th Dep't 2009); lv. denied, 13 N.Y.3d 908 (2009).

This habeas corpus petition followed, wherein Petitioner seeks relief on the basis that his sentence was unduly harsh and excessive and that it was vindictive because the trial court increased his sentence because he asserted his right to trial.  See

Pet. ¶ 22A (Dkt. No. 1).  He also contends, in his supporting Memo. of Law, that the sentence imposed by the trial court was based upon an unreasonable determination of the facts in light of the evidence presented in the trial court.  See Pet'r Mem. of Law (Dkt. No. 2).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## III. Analysis of the Petition

### A.    Abuse of Discretion in Sentencing - Harsh and Excessive Sentence

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a).  When Petitioner appealed his sentence in the state courts, he urged the Appellate Division, Fourth Department to exercise its discretionary authority under state law to modify or reduce his sentence in the interest of justice. See Pet'r Br. on Appeal, Point Four at Resp't Ex. B.  Thus, Petitioner's sentencing claim, based solely on state law, is not appropriate for federal habeas review.

The Second Circuit has held that no federal constitutional issue amenable to habeas review is presented where, as here, the sentence is within the range prescribed by state law.  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992);  Fielding v. LeFevre, 548 F.2d 1102, 1108 (2d Cir. 1977);  Underwood v. Kelly, 692 F. Supp. 146 (E.D.N.Y.1988), aff'd, 875 F.2d 857 (2d Cir.), cert. denied, 493 U.S. 837 (1989).   In this case, Petitioner was

convicted of Criminal Possession of a Weapon in the Second Degree,
which is a Class C violent felony, punishable by three and one-half
years to fifteen years imprisonment.   Penal Law §§ 265.03(3),
70.02(1)(b).  Petitioner was sentenced to eight years imprisonment,
which is well with the range prescribed by New York law.  Penal Law
§ 70.02(3)(b).   Because Petitioner's sentence falls within the
range established by state law, his claim does not present a
federal constitutional issue cognizable on habeas review.  Accord,
e.g., Peppard v. Fischer, 739 F. Supp.2d 303, 309 (W.D.N.Y. 2010)
(collecting cases).

In his Memo. of Law, Petitioner "concedes that an excessive
sentence claim may not be raised as grounds for habeas corpus
relief if the sentence is within the range prescribed by state
law."  Pet'r Mem. of Law at 13.  Nonetheless, he invokes 28 U.S.C.
§ 2254(d)(2),[2] and urges the Court to examine the merits of his
claim on the basis "that the state court's sentence was based on an
unreasonable determination of the facts in light of the evidence
presented in state court."  Id. at 14.  In particular, he argues
that it was unreasonable for the trial court to conclude "that the

_____

[2]
28 U.S.C. § 2254(d)(2) provides that:

> [a]n application for a writ of habeas corpus on behalf
> of a person in custody pursuant to the judgment of a
> State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State Court
> proceedings  unless  the  adjudication  of  the  claim
> resulted in a decision that was based on an unreasonable
> determination  of  the  facts  in  light  of  the  evidence
> presented in the State Court proceeding.

approximately five people present in the alley when the Petitioner fired the weapon constitutes a crowd." Id. at 13-14.  According to Petitioner, the eight year sentence imposed by the trial court was "imposed in great part due to [the court's] misperception of the weapon being fired into a crowd." Id. at 6.  The Court finds this argument, which is, in sum and substance, an abuse of discretion in sentencing claim, unavailing.

First, Petitioner has not cited any authority -- nor is the Court aware of any -- in which 28 U.S.C. § 2254(d)(2) has been applied in a sentencing context and which would permit this Court, sitting in federal habeas review, to review the merits of Petitioner's otherwise not cognizable sentencing claim.  Petitioner cites 18 U.S.C. § 3553(a), which sets forth factors to be considered by federal courts in imposing federal sentences, and a Second Circuit case discussing same. See Pet'r Mem. of Law at 14. These references are inapplicable to Petitioner's state court conviction and subsequent state court sentence.  Further, the state court cases Petitioner cites -- apparently in support of his position -- do nothing in that respect insofar as they stand for the principle that New York sentencing courts are allocated wide latitude in dispensing punishment. Id. at 14-15.

Second, the trial evidence amply supported the sentencing court's determination that Petitioner possessed, and fired, a loaded firearm near a public establishment, and in dangerous

proximity to others, such that the particular number of people that constitutes "a crowd" is of no moment. As Petitioner himself points out, both Peterson and Stevens testified that there were numerous people in the alleyway at the time of the incident. See Pet'r Mem. of Law at 13; T.T. 284, 343, 355. Peterson and Stevens testified that they saw a muzzle flash near Petitioner and heard a bang. T.T. 241, 346. The couple in the alley then dropped to the ground; Peterson believed the man had been shot. T.T. 241, 348. When targeted by security and law enforcement, Petitioner dropped a weapon later proven through forensics testing to be operable. T.T. 340, 350, 407-409, 428-434. This proof provided the trial court ample justification for its sentence. Accordingly, Petitioner's particular argument that the state court's sentence was based upon an unreasonable determination of the facts in light of the evidence presented fails.

**B. Violation of the Eighth Amendment**

**1. Exhaustion**

A petitioner must exhaust all available state remedies either on direct appeal or through a collateral attack of his conviction before he may seek a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b); <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995). The exhaustion of state remedies requirement means that the petitioner must have presented his constitutional claim to the highest state court from

which a decision can be obtained.  Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir. 2000) (citing Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991)).   A claim is properly exhausted when the state court is fairly apprised of the claim's federal nature and of the factual and legal premises underlying the claim.  Grey, 933 F.2d at 119-20.

To the extent Petitioner raises an Eighth Amendment claim in the instant petition, the Court finds said claim unexhausted because the constitutional nature of the claim was not "fairly presented" to the state courts on direct appeal.  Petitioner's Appellate Division brief presented his harsh and excessive sentence claim in terms of state law, invoking the power of a state appellate court to modify or reduce a sentence in the interest of justice under New York Crim. Proc. Law ("C.P.L.") §§ 470.15(2)(c) and 470.20(6).   Courts in this district have found that a prisoner's reliance on a state procedural law granting courts discretionary authority to reduce sentences does not "fairly present" his or her constitutional claim in state court.  Accord, Bester v. Conway, 778 F. Supp. 2d 339, 2011 U.S. Dist. LEXIS 43141, 2011 WL 1518696, at *8 (W.D.N.Y. 2011) (citing King v. Cunningham, 442 F. Supp.2d 171, 181 (S.D.N.Y. 2006) (citations omitted)). Because Petitioner could return to state court and file a motion pursuant to C.P.L. § 440.20 to set aside the sentence on the ground that it is unconstitutional, his Eighth Amendment claim remains unexhausted.

Petitioner's failure to exhaust the Eighth Amendment claim is not fatal to this Court's disposition of his application on the merits.  Because the Court finds the claim to be wholly meritless, it has the discretion to dismiss the petition notwithstanding Petitioner's failure to exhaust.  See 28 U.S.C. § 2254(b)(2); Pratt v. Greiner, 306 F.3d 1190, 1197 (2d Cir. 2002).

## 2.   Merits of the Claim

The Supreme Court has articulated a principle of "gross disproportionality" for measuring whether a prisoner's sentence violates the Eighth Amendment proscription against "cruel and unusual punishment."  E.g., Harmelin v. Michigan, 501 U.S. 957 (1991);  Solem v. Helm, 463 U.S. 277 (1983);  Rummel v. Estelle, 445 U.S. 263 (1980).  Only extreme sentences that are grossly disproportionate to the crimes for which they are imposed can be said to violate the Eighth Amendment. See id.; see also United States v. Snype, 441 F.3d 119, 152 (2d Cir. 2006) (noting that successful challenges to the proportionality of particular sentences have been exceedingly rare).  Given the Supreme Court's precedent on this issue, the Court finds that this case does not present one of those rare and extreme circumstances in which the Supreme Court contemplated intervention by a reviewing court into a state's sentencing decision.

## C.   Vindictive Sentencing

Petitioner argues, as he did on direct appeal, that his eight year sentence was vindictive because it was more than double the sentence he was offered as part of a plea bargain. See Pet. ¶ 22A. The Appellate Division, Fourth Department adjudicated this claim on the merits and, thus, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies.

Under AEDPA, the Court may award habeas relief only if the state court's adjudication of the merits of his federal claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or amounted to an "unreasonable determination of the facts" in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(1)(2).

It is axiomatic that a state may not penalize a criminal defendant for exercising his constitutional right to trial. See Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."). However, the Supreme Court has noted that a defendant in plea bargaining circumstances will often be "confronted with the certainty or probability that, if he determines to exercise his right to plead innocent and to demand a jury trial, he will receive a higher sentence that would have followed a waiver of those rights."

<u>Chaffin v. Stynchcombe</u>, 412 U.S. 17, 30-31 (1973) (quotation omitted);   <u>accord, e.g.</u>, <u>Corbitt v. New Jersey</u>, 439 U.S. 212 (1978).   Thus, the fact that petitioner received a greater sentence than the one that was offered in connection with previous plea offers, does not, in and of itself, establish vindictive sentencing.   See <u>Russ v. Greene</u>, No. 04-CV-6079 (VEB), 2009 U.S. Dist. LEXIS 82954, 2009 WL 2958007 at *11 (W.D.N.Y. Sept. 11, 2009) (collecting cases).   Here, Petitioner provides no evidence –- aside from the fact that the sentence he was offered in exchange for his guilty plea was less than the sentence he received after trial -- that his sentence was vindictive.   In fact, the record reflects to the contrary.   At sentencing, the trial court judge explicitly stated, "I want to make one thing perfectly clear.   You are not being punished because you went to trial.   You are being punished for the crime you committed and for all the facts and circumstances surrounding that crime."   S.M. 7.   Accordingly, the Court cannot find that the state courts' adjudication of this claim contravened or unreasonably applied clearly established Federal law.

**V.   Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed.   Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate

of appealability. <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000).   The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.   <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      January 27, 2012
            Rochester, New York